UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIGHTON PARK NEIGHBORHOOD COUNCIL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LINDA MCMAHON, Secretary of Education, et al.,<br><br>Defendants. | Civil Action No. 25-4523 (SLS) |

**MEMORANDUM IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to the Court's December 30, 2025, Minute Order, Defendants respectfully submit this opposition to Plaintiffs' motion for a temporary restraining order ("TRO Mot.," ECF No. 3), in this grants termination matter. As per the Court's order, Defendants' opposition is limited to: (1) the Court's jurisdiction, and (2) the Court's authority to extend the availability of the disputed appropriations. Min. Order (Dec. 30, 2025). Should the Court enter a temporary restraining order, Defendants request the opportunity to provide full briefing in opposition to a preliminary injunction. Nonetheless, this case is moot because the Department of Education (the "Department") has obligated the vast majority of the appropriated funds and is in the process of obligating by the deadline whatever small amount remains unobligated.[1]

[1] Consistent with the Department's regulations at 34 C.F.R. § 75.236, when funds are obligated by the Department to a grantee, the Department makes a commitment to provide the funds under the terms and conditions of the grant. Ex. 1, Declaration of Richard Wilson ("Wilson Decl.," attached hereto) ¶ 3.

## BACKGROUND

The Department currently administers the Full-Service Community Schools ("FSCS") program which provides grants for the support of full-service community schools that are designed to service children and families, particularly for children attending high-poverty schools. All FSCS grantees, as a condition of their grants, must provide high-quality academic, social, and health services for students, their family members, and to community members to improve educational outcomes for children. Moreover, the Department reserves the right to discontinue grants awarded to any grantee when a determination is made that the continuation of a grantee's FSCS project is no longer in the best interest of the federal government, pursuant to 34 C.F.R. § 75.253(a)(5) and (f)(1). Accordingly, on December 12, 2025, the Department informed the Metropolitan Family Services ("MFS") that its FSCS grant would be discontinued because, *inter alia*, a determination had been made that the aforesaid grant violated federal civil rights law and undermined the well-being of the students serviced by MFS. *See generally* Ex. A, TRO Mot. (ECF No. 3-3). The Department's lawful decision—not challenged here—to discontinue MFS's grant is ultimately what prompted Plaintiffs, Brighton Park Neighborhood Council ("BPNC") and the American Federation of Teachers ("AFT"), to initiate this case and file their motion on December 29, 2025.

But, as an initial matter, there is no doubt that BPNC and AFT are only, at best, third-party beneficiaries of the MFS grant. *See, e.g.*, Brosnan Decl. (ECF No. 3-2) ¶¶ 2, 6-7 (confirming that BPNC's only connection to the MFS grant is as a contractor of the Chicago Public Schools system, which was awarded a subgrant by MFS and which then contracted BPNC to provide FSCS-related services at Curie Metropolitan High School); *see also generally* McNeil Decl. (ECF No. 3-4) (failing to identify any connection at all between AFT and the MFS grant that is at issue in this case). Plaintiffs' lack of standing, by itself, should provide sufficient justification for the Court to

deny their motion. Nevertheless, as explained below, the Court also lacks subject-matter jurisdiction over Plaintiffs' Administrative Procedure Act ("APA") claims. And also importantly, to the extent that Plaintiffs have brought any viable APA claims, such claims are moot.

Accordingly, the Court should deny Plaintiffs' motion.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The moving party bears the burden of persuasion and must demonstrate "by a clear showing" that the requested relief is warranted. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). A "court must be persuaded as to all four factors." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.*, 678 F. Supp. 3d 88, 100 (D.D.C. 2023).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). The Supreme Court subsequently reaffirmed its disagreement with the sliding scale approach holding that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). And where a party "seeks a mandatory injunction—to change the status quo through

action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. 2022) (*per curiam*) (characterizing injunction that would reinstate the plaintiff in his prior leadership roles as a "mandatory preliminary injunction . . . requir[ing] a higher standard than an ordinary preliminary injunction"); *but see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

Regardless, if the Court concludes that a claim fails as a matter of law—on a point of jurisdiction or merits—then a preliminary injunction is inappropriate. *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017). Because preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018). Even if the movant can show a strong likelihood of success on the merits but fails to make a sufficient showing of irreparable injury, the Court must deny the request for preliminary injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

## ARGUMENT

### I. This Case is Moot Because the Department Has Obligated the Vast Majority of Appropriated Funds and Plans to Obligate Any Remaining Amounts by the Deadline.

"'Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies.'" *Daimler Trucks N. Am. LLC v. EPA*, 745 F.3d 1212, 1216 (D.C. Cir. 2013) (quoting *United Bhd. of Carpenters & Joiners v. Operative Plasterers' & Cement Masons'*

*Int'l Ass'n*, 721 F.3d 678, 687 (D.C.Cir.2013)). "Courts 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). "Moreover, the case 'must remain live 'at all stages of review, not merely at the time the complaint is filed.'" *Id.* (quoting *United Bhd. of Carpenters*, 721 F.3d at 687). A federal court should not decide a case "'if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* (quoting *LaRoque v. Holder*, 679 F.3d 905, 907 (D.C. Cir. 2012)).

Plaintiffs here ask the Court to vacate a purported decision by the Department not to obligate $150 million appropriated funds to the Full-Service Community Schools program under 20 U.S.C. § 7273. Compl. (ECF No. 1) at 30-31. Indeed, a key assumption of Plaintiffs' case is that the Department terminated certain grants, "has not obligated those funds to other awards and does not plan to do so before the funds expire . . . on December 31, 2025." *Id.* ¶ 4. That is incorrect. Of the $150 million Congress appropriated for FSCS grants for Fiscal Year 2025, "$143.2 million has already been obligated to FSCS grantees in the form of new and continuation awards." Ex. 1, Wilson Decl. ¶ 3. The Department "is in the process of obligating the remaining $6.3 million to a continuation award" and "also plans to award a contract to provide technical assistance to grantees to support their data collection and evaluation for the amount of $507,069.35." *Id.* ¶ 4. Once those funds are obligated on or before December 31, 2025, the Department would have obligated all $150 million appropriated funds. Because the Department has obligated appropriated funds and is in the process of finalizing obligations of any remaining funds, there is no "actual, ongoing controvers[y]" for the Court to resolve, and the Court should dismiss this case as moot. *Daimler Trucks*, 745 F.3d at 1216.

## II. <u>The Court Lacks Subject-Matter Jurisdiction.</u>

The Court asked whether it has subject-matter jurisdiction. Min. Order (Dec. 30, 2025). The Court lacks subject matter jurisdiction for at least two additional reasons. *First*, Plaintiffs lack standing to bring claims for legal rights of third parties. More fundamentally, Plaintiffs have not shown that the order they seek would "likely" redress their asserted injury. *Second*, Plaintiffs assert claims for disbursement of public funds, but the APA explicitly forecloses money damages as an available remedy. And whether Plaintiffs may bring claims under the Tucker Act is irrelevant.

### A. Plaintiffs' Lack Article III Standing Because They Do Not Assert Their Own Legal Rights.

Standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). It requires that a plaintiff "possess a personal stake" in the outcome, which "helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). The standing doctrine thus "serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action." *Id*. at 379–80. The standing doctrine further ensures that "'the Framers' concept of the proper—and properly limited—role of the courts in a democratic society' is vindicated, by ensuring decisions meant for the political process are left to the political process." *Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*, Civ. A. No. 25-0943 (TNM), 2025 WL 1078776, at *4 (D.D.C. Apr. 10, 2025) (quoting John Roberts, Article III Limits on Statutory Standing, 42 Duke L. J. 1219, 1220 (1993)).

Under any theory of standing, "the irreducible constitutional minimum" requires that, (1) the plaintiff have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the

injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Animals v. Jewell*, 828 F.3d 989, 991–92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Importantly, standing is "not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation modified). "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (citation modified).

Plaintiffs here run "headlong into the third-party standing doctrine." *Am. Foreign Srvs. Ass'n v. Trump*, 792 F. Supp. 3d 116, 131 (D.D.C. 2025) (Nichols, J.). Generally, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). As Plaintiffs readily admit, they are third-party beneficiaries of grant awards and seek an order "to require the Department to obligate the unspent, expiring funds to some new or existing grant under the FSCS program[.]" PI Mem. (ECF No. 3-1) at 10. Even assuming Plaintiffs can show a "close relationship" with the third-party recipients of Department grants, Plaintiffs have "not identified any reason that those recipients could not bring their own action to restore funding." *Am. Foreign Srvs. Ass'n*, 792 F. Supp. 3d at 132.

But even assuming Plaintiffs could clear that bar, "it is 'purely speculative' that [their alleged] injuries would be redressed if the Court were to grant Plaintiffs the relief they seek." *Johnson v. Becerra*, 668 F. Supp. 3d 14, 21 (D.D.C. 2023). "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (citation modified). "The key word is 'likely.'" *Id.* (quoting *Lujan*, 504 U.S. at 561). Plaintiffs' proposed order would require the disbursement of funds from the public fisc. Proposed Order (ECF No. 3-

5) at 1, 2. But Plaintiffs disclaim seeking funding "to a particular contract or contractor." PI Mem. (ECF No. 3-1) at 9. Plaintiffs thus ask the Court to make a series of speculative assumptions on redressability: following an order from this Court, (1) the Department would disburse funds to specific (unidentified) entities, and (2) those entities would then further disburse government funds to Plaintiffs. The Court should reject these "overly speculative [] links which are predictions of future events (especially future actions to be taken by third parties)." *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015). Thus, Plaintiffs have failed to meet their burden of producing "substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C.Cir.2004). That deficiency is fatal to Plaintiffs' standing. *U.S. Ecology, Inc. v. DOI*, 231 F.3d 20, 24 (D.C. Cir. 2000).

**B. The Administrative Procedure Act Does Not Waive Sovereign Immunity for Money Damages.**

Plaintiffs here ask the Court to compel Defendants to disburse $150 million for the Full Service Community Schools program. Proposed Order (ECF No. 3-5) at 1, 2. In other words, Plaintiffs ask for "the classic contractual remedy of specific performance." This Court cannot grant that relief because "the United States, as a sovereign, is generally immune from suits seeking money damages . . . [unless] Congress [] choos[es] to waive that immunity." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024); *see also United States v. Testan*, 424 U.S. 392, 399 (1976); *Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984). A "waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Kirtz*, 601 U.S. at 48 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 76 (2000)). Plaintiffs argue that the "Tucker

Act categorically does not apply to the claims at issue[.]" PI Mem. (ECF No. 3-1) at 9.[2] They insist that their claims are not founded on any particular grant, but "seek only the obligation of funds, without regard to a particular contract or contractor." *Id.* Thus, they say, the APA allows them to proceed on their claims. *Id.* Not so, because "the APA does not authorize suits seeking 'money damages' against the Government." *Jibril v. Mayorkas*, 101 F.4th 857, 870 (D.C. Cir. 2024) (quoting 5 U.S.C. § 702).

"Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)); *accord Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 (D.C. Cir. 2006) (same). That description fits this suit—in which Plaintiffs seek to compel Defendants to pay sums of money—exactly. By asking the Court to disburse $150 million in funds, Plaintiffs seek "to compel [Defendants] to pay a sum of money" and its suit is "for 'money damages.'" *Knudson*, 534 U.S. at 210. Accordingly, the APA's limited waiver of sovereign immunity does not extend to this suit. *See* 5 U.S.C. § 702; *Jibril*, 101 F.4th at 870; *see also Am. Ass'n of Physics Teachers, Inc. v. Nat'l Science Found.*, --- F. Supp. 3d ---, 2025 WL 2615054, at *9 (D.D.C. 2025) (Cobb, J.).

Plaintiffs insist that jurisdiction is proper under the APA because as subgrantees they are not in privity with the government. PI Mem. (ECF No. 3-1) at 11. Plaintiffs argue that the "source of the rights" asserted by Plaintiffs are "the provisions of the appropriations acts and the ESEA." *Id.* at 12. However, Plaintiffs point to no statutory provision that entitles them to any specific

---

2 Citations are to the ECF-generated page numbers, appearing in blue color at the top right corner of each page.

amount of funds, or any funds at all, which is fatal to their claim. Indeed, Plaintiffs do not receive any funds from the government – they are subgrantees to the actual grantees. Compl. (ECF No. 1) ¶ 7. In other words, Plaintiffs' asserted right to funds arises solely from any grant or contract agreement between them and the actual government grantees, and "in no sense . . . exist[s] independently of" those contracts. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Plaintiffs would have no claim absent the grants and the government's alleged cancelation. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C. Cir. 1982). The source of the right asserted is therefore not "truly independent" of the contracts, or not "based on truly independent legal grounds." *Id*. at 970.

Indeed, the second prong of *Megapulse*, the relief sought, is dispositive here and, at base, is payment of money from the public fisc. The payment of money, far from being merely incidental to or "hint[ed] at," is the principal object of their suit. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1112 (D.C. Cir. 2022). "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied." *Knudson*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 918–19 (Scalia, J., dissenting)). That is so because "[t]he 'substance' of a money judgment is a compelled transfer of money." *Id.* at 216. All that matters is whether a suit "seek[s] . . . to compel the defendant to pay a sum of money to the plaintiff." *Knudson*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 918-19 (Scalia, J., dissenting)); *see also Richards*, 453 F.3d at 530–31 (applying *Knudson* and explaining that "the rule has long been that '[a] plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money[]'"). If so, the suit is for "money damages,"

regardless of whether the plaintiff characterizes the sum of money it seeks some other form for relief. *Id.*

Moreover, the Court lacks the power to grant Plaintiffs' request to require that the government enter into grant agreements or amend existing grants. Plaintiffs in their brief point to no authority that requires any party, let alone the Government, to contract. Moreover, "the allocation of funds from a lumpsum appropriation is another administrative decision traditionally regarded as committed to agency discretion." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). In short, the Court cannot require the Executive to enter into new contracts or direct funds that Congress has specifically committed to Executive discretion.

At bottom, the Court lacks subject-matter jurisdiction. Indeed, if the Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

### III. The Court's Has the Authority to Extend the Availability of Appropriations, But Should Not Exercise it in this Case.

The Court has asked whether it has authority to extend the availability of the disputed appropriations. Min. Order (Dec. 30, 2025). "A provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance." 31 U.S.C. § 1502(b). As the D.C. Circuit has explained, "in the appropriations context, Congress has expressly authorized courts to suspend the lapse of budget authority while lawsuits play out." *Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024). While the Court has the authority to extend the availability of appropriations, such authority is contingent upon the Court having subject-matter jurisdiction and the issue not being moot. As explained above, the Court lacks jurisdiction for at least three independent bases.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for temporary restraining order.

Dated: December 30, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *<u>/s/ Dimitar P. Georgiev</u>*
DIMITAR P. GEORGIEV, D.C. Bar # 1735756
FITHAWI BERHANE
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252 – 7678

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIGHTON PARK NEIGHBORHOOD COUNCIL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LINDA MCMAHON,<br>Secretary of Education, et al.,<br><br>Defendants. | Civil Action No. 25-4523 (SLS) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiffs' Motion for a Temporary Restraining Order (ECF No. 2), Defendants' opposition, and the entire record herein, it is hereby

ORDERED that Plaintiffs' motion is DENIED, and it is further

SO ORDERED:

_________________
Date

_________________________________
SPARKLE L. SOOKNANAN
United States District Judge