# Exhibit A

2026 WL 948205

2026 WL 948205
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

The Board of Education of the City School
District of the City of New York, Plaintiff,
v.
United States Department of Education et al., Defendants.

25-cv-8547 (AS)
|
Filed 04/08/2026

**Attorneys and Law Firms**

Melanie Calandra Teresa Ash, Emeline Kong, Gavin B. Mackie, June R. Buch, Bianca Chloe Isaias, New York City Law Department, New York, NY, for Plaintiff The Board of Education of the City School District of the City of New York.

Abhishek Kambli, U.S. Department of Justice, Washington, DC, Jeffrey Stuart Oestericher, DOJ-United States Attorney's Office, New York, NY, for Defendants Linda McMahon, Craig W. Trainor, Lindsey M. Burke.

Abhishek Kambli, U.S. Department of Justice, Washington, DC, Jeffrey Stuart Oestericher, DOJ-United States Attorney's Office, New York, NY, Ellen Carr, Zachary Paul West, Oklahoma Attorney General, Oklahoma City, OK, Garry M. Gaskins II, Oklahoma Attorney General, Tulsa, OK, for Defendant United States Department of Education.

Rachel Miriam Kleinman, NAACP Legal Defense & Educational Fund, Inc., New York, NY, for Amicus NAACP Legal Defense and Educational Fund, Inc..

Donald Albert Daugherty Jr., Martha Astor, Defense of Freedom Institute, Washington, DC, for Amicus The Defense of Freedom Institute.

Garry M. Gaskins II, Oklahoma Attorney General, Tulsa, OK, Ellen Carr, Zachary Paul West, Oklahoma Attorney General, Oklahoma City, OK, for Amicus State of Oklahoma.

Blair Greenwald, Office of the Attorney General, New York, NY, for Amicus State of New York.

OPINION AND ORDER

ARUN SUBRAMANIAN United States District Judge

**\*1** Plaintiff Board of Education of the City School District of the City of New York, operating as New York City Public Schools (NYCPS),[1] sued the United States Department of Education (DOE) and several of its officers over DOE's decision to discontinue grants to magnet schools because of alleged Title IX violations. After the preliminary-injunction motion was withdrawn, NYCPS moved for summary judgment, and defendants moved to dismiss, or in the alternative, for summary judgment. For the following reasons, NYCPS's motion is GRANTED, and defendants' motion is DENIED.

**BACKGROUND**

The Magnet School Assistance Program (MSAP) is a federal grant program created by Congress to "assist in the desegregation of schools." 20 U.S.C. § 7231(b). As relevant here, Congress has directed that schools seeking funding must provide "assurances that the applicant will ... not engage in discrimination based on race, religion, color, national origin, sex or disability in ... designing or operating extracurricular activities for students." 20 U.S.C. § 7231d(b)(2)(C)(iii). Five NYCPS schools have active MSAP grants, awarded between 2022 and 2023 for five-year terms. Dkt. 6 ¶¶ 4, 27. For federal fiscal year 2025, which ended September 30, 2025, NYCPS had approximately $11 million in unspent MSAP funding that it planned to carry over to the current fiscal year. *Id.* ¶ 11.

On September 16, 2025, Acting Assistant Secretary of Education for Civil Rights Craig Trainor wrote to NYCPS alleging a "civil rights compliance issue" with the city's public schools. Dkt. 6-1 at 1. Trainor pointed to the city's "Guidelines to Support Transgender and Gender Expansive Students" (Guidelines), which he asserted violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and its implementing regulations under 34 C.F.R. Part 106. *Id.*

Trainor's letter pointed out that the Guidelines allowed transgender students to (1) use restrooms, locker rooms, or changing rooms consistent with their gender identity and (2) participate in physical education, intramural sports, and competitive athletics in accordance with their gender identity. *Id.* at 2. Trainor said that Title IX's requirements for "sex-separated intimate facilities and athletics" are "based on

2026 WL 948205

immutable biological differences" and so the Guidelines conflicted with federal law. *Id.* at 2–3.

The letter said that as a result of the alleged violations, DOE would (1) not certify the grants under 20 U.S.C. § 7231d, and (2) "non-continue[ ]" NYCPS's MSAP grants, purportedly under 34 C.F.R. § 75.253(a)(5), which says that the continuation of a multi-year grant is contingent on its being "in the best interest of the Federal Government." Those actions would be taken unless the Guidelines were amended to prohibit transgender students from using locker rooms, bathrooms, and sleeping arrangements that differed from their biological sex. *Id.* at 4–5. It gave NYCPS three days, until September 19, 2025, to notify DOE of whether it would accept these conditions and seek reconsideration. *Id.* at 5.

**\*2**  On September 19, 2025, NYCPS General Counsel Liz Vladeck wrote to Trainor seeking a 30-day extension within which to request reconsideration (the letter did not itself explicitly seek reconsideration). Dkt. 6-2 at 2. Vladeck further asked (1) why DOE had not followed certain processes and procedures before non-continuing the grants; (2) for an explanation as to the nexus between Trainor's interpretation of Title IX and the discontinued funding; (3) how DOE chose which school districts to discontinue MSAP grants to; (4) for confirmation that carryover funding from the prior year could still be used; and (5) for written procedures for processing objections, hearings, and appeals. *Id.* at 2–3.

The following day, Trainor responded to Vladeck by email stating that her "requests are denied" and that the DOE's letter and the cited authorities spoke for themselves. Dkt. 6-3 at 2. He extended the deadline for NYCPS to "implement the remedial measures articulated in [his] September 16 letter" to September 23, 2025, or else any reconsideration would be denied. *Id.* at 2. On September 26, 2025, DOE Deputy Chief of Staff Lindsey Burke wrote a letter to NYCPS, stating among other things that NYCPS was required to return to DOE any funds that had been paid out but had not yet been spent. Dkt. 6-4 at 3.

NYCPS filed this lawsuit on October 15, 2025, against defendants DOE, Education Secretary Linda McMahon, Trainor, and Burke. Dkt. 1. The following day, it filed a motion for a preliminary injunction seeking to spend the carryover funds from the prior year. Dkt. 4. NYCPS withdrew its motion after it reached an agreement with defendants allowing it to spend the carryover funding. Dkt. 42.

The non-continuation decision remains in dispute. NYCPS filed a motion for summary judgment, Dkt. 50, and defendants cross-moved to dismiss, or in the alternative, for summary judgment, Dkt. 56.

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when [a] district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "The task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up). "In resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings." *Est. of Close v. Cigna Health & Life Ins. Corp.*, 2023 WL 8846562, at \*2 (S.D.N.Y. Dec. 21, 2023).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## DISCUSSION

The Court first considers whether it has jurisdiction to hear the case, which is the subject of defendants' motion to dismiss, and then proceeds to consider the merits on the parties' cross-motions for summary judgment.

**I. The Court has jurisdiction**

It is axiomatic that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued."

Case 1:25-cv-04523-SLS    Document 33-1    Filed 04/15/26    Page 4 of 9
The Board of Education of the City School District of the City of..., Slip Copy (2026)
2026 WL 948205

[flag]*United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Administrative Procedure Act (APA) provides a waiver of the federal government's sovereign immunity for "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." [flag]5 U.S.C. § 702. NYCPS contends that this waiver provides this Court jurisdiction to grant relief.

**\*3** Defendants, however, raise three arguments as to why this Court lacks jurisdiction to grant the relief requested. First, they argue that the Tucker Act precludes this Court's jurisdiction over this case. Second, they argue that the APA's waiver of sovereign immunity does not cover this case, as the matter is committed to agency discretion by law. Third, they argue that there is no jurisdiction under Title IX's judicial review provision, 20 U.S.C. § 1683. Defendants' jurisdictional arguments are unpersuasive.

### A. The Tucker Act does not preclude this Court's jurisdiction

The Tucker Act gives the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States." [flag]28 U.S.C. § 1491(a)(1). Since the APA's waiver does not extend to cases where "any other statute [ ] grants consent to suit expressly," [flag]5 U.S.C. § 702, the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over claims that sound in contract.

Defendants argue that the MSAP grants are contracts and that NYCPS is seeking redress from a contractual injury. Citing to portions of the complaint that detail the effects of the grants' non-continuation, they claim that "[t]he source of the right Plaintiff is asserting is therefore the grant agreements themselves." Dkt. 57 at 11. They observe that funding was tied to contractual grant agreements, and that the MSAP agreements incorporate 34 C.F.R. § 75.253(a)(5), which sets forth the requirement that for a continuation award, the Secretary of Education must determine that "continuation of the project is in the best interest of the Federal Government." *Id.* at 12.

Defendants' arguments fall flat. The source of the right that NYCPS seeks to vindicate is not rooted in contract. Yes, NYCPS does allege that the non-continuation of the grants caused it harm. But that only proves that the *injury* is tied to the contracts, not that the *right* that the claim is predicated on is contractual.

Justice Barrett's controlling opinion in [flag]*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025), is instructive. [2] There, the National Institutes of Health issued internal guidance documents that prohibited the funding of "research related to DEI objectives, gender identity, or COVID-19." [flag]*Id.* at 2661 (Barrett, J., concurring). As a result, the NIH terminated existing grants, which led to the lawsuit. *Id.* The district court granted two forms of relief: first, it vacated the guidance, and second, it "ordered the Government to pay [the] plaintiffs sums due under the agreements 'forthwith.' " *Id.*

Reviewing the First Circuit's affirmance of the district court's order, Justice Barrett held that while a challenge to the termination of a grant was an action based on contractual rights that belonged in the Court of Federal Claims, a challenge to the *guidance* that led to the decision to terminate was not. *Id.* Instead, that was an administrative action that could be challenged under the APA in a district court. *Id.* In short, Justice Barrett distinguished an alleged violation of a contractual obligation to pay, which belongs in the Court of Federal Claims, from a challenge to guidance that led to the alleged violation, which may be heard in a district court.

**\*4** That distinction is important here, as NYCPS does not seek relief based on a violation of the grants' terms. Nor does it seek the restoration of any terminated grant. (In fact, no grant was terminated per se, as the grants in question were merely "non-continued.") Instead, NYCPS is only seeking that the non-continuation decision be vacated, Dkt. 74 at 13–16, with no guarantee that any money will ultimately flow. And in support of that request, it cites alleged violations of the APA without relying on the grant agreements.

Defendants' attempt to cast *NIH* in support of its position fails. They read the case to bar any "challenge to an agency's grant determination." Dkt. 57 at 14. But that can't be right, as *NIH* explicitly permitted the vacatur of the guidance that led to the termination, so long as the agency was not ordered to disburse funds. As NYCPS does not seek any order to require the disbursement of funds, defendants' argument simply ignores half of *NIH*'s holding.

Defendants' reliance on *U.S.* 🚩*Dep't of Educ. v. California,* [604 U.S. 650 (2025)](#) (per curiam), is also misplaced. There— in a case that predated *NIH*—the Supreme Court held that a claim seeking to "enjoin[ ] the Government from terminating various education-related grants" must be heard in the Court of Federal Claims. 🚩*Id.* [at 650–51](#). Critical to the case was the district court's order that "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." 🚩*Id.* [at 650](#). But the Court noted that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." 🚩*Id.* [at 651](#) (quoting 🚩*Bowen v. Massachusetts,* [487 U.S. 879, 910 (1988)](#)). This is true even where a "judgment tells the United States that it may not disallow the [payment] on the grounds given, and thus it is likely that the Government will abide by this declaration and [pay the plaintiff] the requested sum." *Bowen*, 587 U.S. at 910. In this case, NYCPS's summary-judgment motion does not seek to have this Court order that any money be paid out. In fact, the motion does not seek relief that even has any immediate "possibility" of "result[ing] in the disbursement of funds." 🚩*California,* [604 U.S. at 651](#). Instead, NYCPS seeks only to have defendants' decision to non-continue the funding vacated so that defendants can make a new determination. Defendants would have to make a continuation decision after vacatur for any funds to flow— none would flow as an immediate result.

**B. The actions are not committed to agency discretion by law**

Defendants' next argument is that the APA precludes review of their decisions. The APA precludes judicial review where "agency action is committed to agency discretion by law." 🚩[5 U.S.C. § 701(a)(2)](#). "This exception to the availability of judicial review 'applies only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.' " 🚩*Westchester v. U.S. Dep't of Hous. & Urb. Dev.,* [778 F.3d 412, 419 (2d Cir. 2015)](#) (quoting 🚩*Sharkey v. Quarantillo,* [541 F.3d 75, 91 (2d Cir. 2008)](#)).

Defendants argue that the non-continuation was under [34 C.F.R. § 75.253(a)(5)](#), which requires that grantees "[r]eceive a determination from the Secretary that continuation of the project is in the best interest of the Federal Government" before a multi-year grant is continued. They argue that the

language of the provision commits the decision to agency discretion by law. Dkt. 57 at 17–20. This argument fails for three reasons.

**\*5** *First*, defendants do not point to any binding authority allowing an agency to invoke 🚩[§ 701(a)(2)](#) because of discretion conferred by a regulation instead of a statute. Indeed, defendants' brief spends half a page talking about places "[w]here the statute does not provide any judicially manageable standard." Dkt. 57 at 17. They do not once point to a situation where a court held that a regulation, and not a statute, rendered an agency decision "committed to agency discretion by law."

The Court's research turned up a few out-of-circuit cases that have suggested that 🚩[§ 701(a)(2)](#) would apply to regulations in the immigration context where the authority itself is created by regulation. *See* [*Sheikh v. U.S. Dep't of Homeland Sec.,* 685 F. Supp. 2d 1076, 1087–88 (C.D. Cal. 2009)](#) (collecting cases). But the Court has found no case applying it to a situation where the underlying authority (here, to grant funds) was created by statute but the grant of discretion (the "best interest" requirement) was created by regulation. And for good reason. Agencies, after all, both issue and enforce regulations. If an agency could grant itself unbridled discretion to ignore its statutory duties, it would create an end-run around the APA's procedural requirements. The Court is therefore skeptical that the narrow exception to judicial review would apply in such a situation.

*Second*, even if the "best interest" requirement qualified for the exemption from judicial review under the APA, defendants' argument assumes that the non-continuation was under the "best interest" regulation and not under Title IX— which is the merits question before the Court. And where "a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits." [C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (4th ed. 2025)](#).

*Third*, even if the Court were to find that review under the APA was not permitted under 🚩[§ 701(a)(2)](#), the exception would be overridden by Title IX's review provision. Under that provision, "[a]ny department or agency action taken" that "terminat[es] or refus[es] to grant or to continue financial assistance upon a finding of failure to comply with any requirement" of Title IX "shall be subject to such judicial review" and "such action shall not be deemed committed to

2026 WL 948205

unreviewable agency discretion within the meaning of section 701" of the APA. 20 U.S.C. § 1683. Put simply, Congress has explicitly said that an agency cannot raise this defense to any claim under Title IX challenging the termination or discontinuation of funding.

**C. The Court need not consider defendants' argument concerning Title IX's judicial review provision, but it fails for the same reason**

Defendants finally argue that Title IX's judicial review provision, 20 U.S.C. § 1683, does not provide for jurisdiction in this case. That provision provides for judicial review in a district court if a Title IX enforcement action, including "terminating or refusing to grant or to continue financial assistance," is not "otherwise subject to judicial review." Defendants appear to read NYCPS as viewing that provision as an alternate source of jurisdiction if the APA does not apply. Dkt. 57 at 14–16.

The Court need not reach the issue, given that it has concluded that the APA does apply by its own terms. But even if it didn't, defendants' argument would fail. Their argument against § 1683 serving as the basis for jurisdiction rests on the Tucker Act, which the Court has already rejected as applying to this action. It follows that the identical argument raised against jurisdiction under Title IX's judicial review provision also fails.

**\*6** With all jurisdictional objections addressed, the Court proceeds to the merits.

**II. NYCPS is entitled to summary judgment**

For the most part, the parties agree on the facts. As a result, the dispute between the parties is primarily a legal one: what, if any, required statutory procedures apply.

Under the APA, a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... without observance of procedure required by law." 🚩 5 U.S.C. § 706(2)(D). To revoke funding under Title IX, an agency must (1) make findings on the record after a hearing; (2) attempt to secure voluntary compliance; (3) file a written report with both Houses of Congress detailing the circumstances of the violation; and (4) wait thirty days after the report is filed. 20 U.S.C. § 1682.

It is undisputed both that defendants did not follow these statutory procedures, and that the procedures would apply if they non-continued the grants because of Title IX violations. Instead, defendants argue that Title IX's procedures are inapplicable because funding was non-continued under 34 C.F.R. § 75.253(a)(5). That argument flies in the face of the record.

Trainor's September 16 letter makes clear that the alleged violations were violations of Title IX. The letter opens with a statement that DOE's Office of Civil Rights "is deeply concerned" about the Guidelines, "the text of which authorizes discrimination on the basis of sex in violation of Title IX." Dkt. 6-1 at 2. The following page details several sections of the Guidelines that are alleged to violate Title IX. *Id.* at 3. And the letter closes by telling NYCPS that funding can be restored if the alleged violations are remedied —referencing Title IX four times. *Id.* at 4–5. It makes clear that reconsideration will be granted if NYCPS "will agree to take the remedial steps described above to ensure it is in compliance with Title IX and its implementing regulations." *Id.* at 5. Only a single, context-free sentence contains any reference to § 75.253(a)(5).

It thus strains credulity to argue that the DOE's actions were anything other than an effort to enforce Title IX. Trainor's letter's plain text says that defendants (1) made "findings" of Title IX violations; (2) proposed specific actions that would remedy the alleged violations; and (3) explicitly conditioned reconsideration on whether NYCPS came into compliance with defendants' interpretation of Title IX. *Id.* at 2–5.

Nor does the fact that this was a mere "non-continuation" rather than a "termination" render this outside of Title IX's required procedures. In providing for judicial review of enforcement actions under the law, Congress made clear that "terminating or refusing to grant or to continue financial assistance" is reviewable. 20 U.S.C. § 1683.

In fact, accepting defendants' argument that they can talk almost exclusively about Title IX but then claim that Title IX procedures do not apply would largely render the specific enforcement provisions that Congress wrote into the statute irrelevant. If DOE could simply withdraw funding under the guise of a "discretionary" § 75.253(a)(5) determination after it alleged a Title IX violation and explicitly conditioned future funding on remedying that violation, there would be little point to the formal procedures Congress mandated when DOE suspects a violation of Title IX.

**\*7** To be clear, the Court does not express any opinion on whether NYCPS or defendants are right about whether the Guidelines violate Title IX. NYCPS dedicates several pages in its brief to arguing that defendants are misinterpreting the statute. Dkt. 52 at 29–31. While defendants do not address the subject in their briefing, Trainor's letter expresses a contrary reading of the law. Dkt. 6-1 at 3–4. And several amici have weighed in on both sides of the debate. Dkts. 61, 67-1, 78-1. The Court need not—and does not—address the question of whose interpretation is correct.

Nor does the Court conclude that there are no proper grounds for the withdrawal of this funding. But the Supreme Court has made clear that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also* *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015) (noting that it is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action"). And since any reasonable reading of the record makes clear that the decision to non-continue the grants was based on alleged Title IX violations, the Court is bound by *Chenery* to consider defendants' actions only within the bounds of Title IX. *See Apogee Coal Co. v. Off. of Workers' Comp. Programs*, 113 F.4th 751, 761 (7th Cir. 2024) (holding that *Chenery* precluded the court from looking to rationales that had only "passing mention" in the agency decision when the record made clear that the decision rested on other grounds); *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (similar).

As the record makes clear that DOE's non-continuation decision was a Title IX enforcement action, and since it is undisputed that defendants did not follow Title IX's procedures, they acted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). As that conclusion is sufficient to afford NYCPS relief, the Court does not consider its remaining merits arguments.

## III. NYCPS is entitled to vacatur, declaratory relief, and a permanent injunction

The final question before the Court is the appropriate remedy. The Court cannot—and does not—order defendants to expend any funds to NYCPS or to renew the grants. Instead, NYCPS is entitled only to vacatur, declaratory relief, and a permanent injunction.

Defendants do not state any arguments against vacatur or declaratory relief beyond their arguments on the merits. So any separate challenges to those forms of relief are forfeited. Defendants do, however, make several arguments in opposition to injunctive relief.

*First*, they argue that an injunction requiring defendants to provide NYCPS with a new continuation determination "is in essence a request for specific performance barred by the Tucker Act because Plaintiff's entitlement to a continuation determination itself only stems from its contractual relationship" with defendants. Dkt. 57 at 30. But that argument fails. As an initial matter, NYCPS claims entitlement to the statutory procedures available under Title IX for non-continuations made under that statute. Its challenge is not focused on any term of any grant, nor does it seek the payment of funds. And the Court is not ordering specific performance of any grant. Specific performance in this context would mean the expenditure of funds or the enforcement of the non-payment provisions of a grant agreement. The Court agrees that *NIH* (among other cases) has made clear that district courts cannot issue such relief, only the Court of Federal Claims can.

**\*8** *Second*, defendants argue that because "Plaintiff's alleged irreparable harm stems from a loss of funding" it "can be remedied through monetary relief" in the Court of Federal Claims and therefore does not constitute irreparable harm. *Id.* As an initial matter, it's not clear that the Court of Federal Claims could even award relief in this case, since it typically cannot hear APA claims. *See Heuss v. United States*, 315 F. App'x 255, 257 (Fed. Cir. 2008) ("[T]he Court of Federal Claims does not have jurisdiction to hear cases arising under the APA."). [3] But setting that aside, the argument misstates the nature of the harm alleged. NYCPS argues that it suffered an injury in being denied its statutory process under Title IX. A procedural injury can constitute irreparable harm. *See, e.g.*, *Karem v. Trump*, 960 F.3d 656, 667–68 (D.C. Cir. 2020) (affirming a preliminary injunction even though the plaintiff "st[ood] to suffer only a procedural harm"); *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1290 (Ct. Int'l Trade 2019) ("A procedural violation can give rise to irreparable harm justifying injunctive relief because lack of process cannot be remedied with monetary damages or post-hoc relief by a court."); *see also* *Fuentes v. Shevin*,

407 U.S. 67, 82 (1972) ("[N]o later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred."). The injury in this case can only be remedied by defendants following the proper procedures if they wish to non-continue funding on the grounds that they have stated, which is all NYCPS is asking for. Dkt. 52 at 32–33. The injury thus constitutes irreparable harm that can only be remedied by an injunction.

*Third*, they argue that the balance of equities and public interest weigh against an injunction. Defendants do not develop this argument, stating only that "[t]here is no public interest in compelling federal agencies to make discretionary funding decisions." *Id.* That categorical statement can't be true in all cases. After all, federal spending is undertaken to "provide for the ... general Welfare of the United States," U.S. Const. art. I, § 8, cl. 1, so one would hope that many if not most funding decisions would be in the public interest. To the extent that there is a reason why there is no public interest in requiring *this* funding determination to be made, defendants do not say what it is. If anything, Title IX's provision of specific procedures to be followed if government funding is non-continued for violating that law's proscriptions indicates that there *is* a strong public interest in granting NYCPS's requested relief here.

The Court notes that there might be reasons to challenge the scope of NYCPS's proposed injunction, which would require defendants to make a continuation decision with respect to each of NYCPS's MSAP grants within 10 days of this order, and prevents them from non-continuing MSAP grants based on Title IX findings or "civil rights violations" related to Title

IX without following Title IX's procedures. Dkt. 52 at 31–33. But since defendants do not raise any challenge to the scope of the injunction, the Court deems any such challenge forfeited.

## CONCLUSION

NYCPS's motion for summary judgment is GRANTED; defendants' motion to dismiss or for summary judgment is DENIED.

Defendants' non-continuation determination with respect to the five MSAP grants is VACATED; it is DECLARED that defendants failed to follow the required Title IX procedures. Defendants are PERMANENTLY ENJOINED from non-continuing MSAP grants to NYCPS based on Title IX findings or "civil rights violations" related to Title IX without following the required Title IX procedures.

Defendants are ORDERED to make a continuation determination with respect to each of NYCPS's MSAP grants within 10 days of this order.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 50 and 56, to enter judgment for plaintiff, and to close the case.

**\*9** SO ORDERED.

**All Citations**

Slip Copy, 2026 WL 948205

## Footnotes

1    For the purposes of this opinion, the Court uses "NYCPS" to also encompass the New York City Department of Education, to which some of defendants' correspondence is addressed.

2    Although there was no majority opinion, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (citation omitted). As Justice Barrett was the only justice to fully concur in both parts of the judgment, the Court treats her concurrence as the controlling opinion. *See President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 105 (D. Mass. Sept. 3, 2025) (referring to Justice Barrett's concurrence in the case as "controlling").

2026 WL 948205

3    Limited exceptions apply where there is an alternate basis for Court of Federal Claims jurisdiction, which does not exist here. This can arise where (1) the claim arises out of a procurement process, where the Court of Federal Claims has broader jurisdiction that is concurrent with the district courts, ⚑28 U.S.C. § 1491(b)(1), or (2) the claimant is seeking monetary damages from the government, and the Court of Federal Claims applies standards borrowed from the APA to the monetary claim. *See BP Expl. & Prod., Inc. v. United States,* 142 Fed. Cl. 579, 592–93 (2019).

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.